UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 05-179 (HHK) |
| | : | |
| v | : | |
| | : | |
| VICTOR QUINONEZ  and | : | |
| SANDRA SANTIAGO | : | |

### GOVERNMENT'S SECOND NOTICE OF EXPERT TESTIMONY

The United States, by and through its attorney, the United States Attorney for the District of Columbia, hereby submits the following notice of expert testimony:

**Drug Expert**.  Sergeant John Brennan will be unavailable for trial next week.  As such, the government intends to call Detective A.O. Washington as a narcotics expert witness in the trial of this case.  Detective Washington's qualifications are outlined below.

Detective Washington may testify -- by providing information, explaining, or by rendering an opinion -- concerning the following:

(a)  the procedures used by the law enforcement agencies in the District of Columbia for handling narcotics evidence and for safeguarding the chain of custody and integrity of the evidence in narcotics cases.

(b)  the quantitative and qualitative analysis of the narcotics evidence by the DEA, the FBI, and the strength of the substance.

(c)  the methodology of narcotics investigations, including the use of undercover officers, confidential informers, cooperators, observation posts, surveillance, search warrants, and audio and video surveillance.

(d) the methods of using and purchasing narcotics in the District of Columbia, including but not limited to: the reasons for such methods; the cost (price) of narcotics, both wholesale and retail; the common dosage of, usable and measurable amounts, and strength of narcotics; packaging materials, cutting agents, scales, and paraphernalia for using drugs; the use of stashes, and methods used to avoid detection of narcotics.

(e) the methods for importing, transporting, manufacturing, processing, packaging, selling, transferring and trafficking narcotics in the District of Columbia, including but not limited to the roles of different participants in drug trafficking schemes.

(f) that beepers, pagers, cellular phones, automobiles, stashes, stash houses, safe houses, crack houses, open air drug markets, couriers, ledgers, safes, weapons, including firearms, and false identities are commonly used in the sale, transfer, processing and trafficking of narcotics in the District of Columbia and elsewhere.

(g) that drug traffickers keep records of transactions, inventories, debts, notes, and contact information by storing them in ledgers, books, computers, or other records.  It is also commonplace to memorialize images of money, guns, drugs, and other illegal articles in videos or photographs.

(h) that drug traffickers employ means of deception, including but not limited to: using coded language; using false identities; using counter-surveillance techniques; having property, licenses, or contract agreements for utilities, communications services, or leases titled or otherwise in the name of another; employing seemingly legitimate business enterprises to launder proceeds, transport or store illegal substances, demonstrate a legitimate source of income, or to provide proof of employment to others who work in the

drug trafficking organization.

(i) that possession of narcotics for use can be distinguished from possession of narcotics with intent to distribute;

(j) that crack cocaine is a street term for a smokeable form of cocaine base and that crack can be identified and distinguished from other contraband.

Detective Washington will base his opinion on the foregoing on their years of training and experience in the area of drug investigations. Detective Washington has been a police officer for more than seventeen (17) years. In September 1988, Detective Washington was assigned to the Fourth District Vice Unit as a narcotics investigator. In March 1990, Washington was assigned to the NSID as a narcotics detective. In November 1992, Washington was detailed to the United States Department of Justice, Drug Enforcement Administration as a Task Force Officer, where he remained until January 7, 2000. Detective Washington has served as a D.C. Superior Court Resident Narcotics Expert since January 7, 2000, and has testified many times.

Apart from his broad and varied work experiences, Detective Washington has been trained at the Police Academy and have received ongoing education and training by various local and federal law enforcement agencies (including MPD, FBI, DEA, DOJ, and ATF) in areas including, but not limited to the surveillance of narcotics; the manufacture of narcotics; the use, sale, packaging, and distribution of narcotics in the District of Columbia; drug identification; the weights and measures of narcotics; surveillance techniques; Constitutional law issues involved in the search and seizure of criminal suspects and their belongings; the conduct and operation of the Mid-Atlantic DEA Laboratory; chain of custody procedures; the safeguarding of narcotics evidence; investigative techniques; the relationship between firearms and drug trafficking; and

the execution of observation posts and undercover operations. In addition, Detective Washington has trained and instructed others -- including police recruits and experienced officers, as well as members of the defense bar in the District of Columbia -- in many of the areas listed above.

Detective Washington is familiar with the packaging, use, distribution, cost, and availability of narcotic substances. He also has kept abreast of developments in the narcotics trade by way of ongoing formal and informal education. With respect to the latter, Detective Washington has participated in actual surveillance operations and arrests, which have involved contact with the participants of narcotics trafficking, including informants, cooperating witnesses, and "special employees."

**DEA Chemist**. The government recently learned that at least one of the defendants is unwilling to stipulate to the drug analyses in this case. As such, the government will call DEA Chemists Christopher Chang, Michelle Garraty, Connie Klinkman, and Elizabeth Pascual, each of whom conducted a drug analysis in this case. The chemists will testify as to the findings in their reports. They will provide expert testimony that the drugs analyzed were in fact cocaine base and cocaine powder. They will discuss the chemical process and the procedures followed to safeguard the samples as they come to them for analysis. Copies of their resumes are attached hereto as Exhibit A.

**Interpreter/Translator.** It is the government's understanding that at least one of the defendants is unwilling to stipulate to the certified transcription and translation of the videotapes that the government intends to introduce in this case. As such, the government will call Marta Goldstein, the individual who translated and transcribed the videotapes. Ms. Goldstein's resume has been previously provided to the defense, and is attached hereto as Exhibit B. The

government expects that Ms. Goldstein will testify, based upon her expertise in Spanish language and grammar and the interpretation and translation of Spanish documents, conversations and tapes of conversations, that the transcriptions and translations she produced are fair and accurate transcriptions and translations of the videotapes in this case.

Detective Washington, the DEA chemists, and Ms. Goldstein are available to discuss their testimony. Please contact me at (202) 616-3384, and I will provide you with the necessary contact information.

Respectfully submitted,

KENNETH L. WAINSTEIN
United States Attorney
Bar No. 451058

Catherine K. Connelly
Assistant United States Attorney
Major Crimes Section, Mass. Bar No. 649430
555 4th Street, N.W. #4844
Washington, DC 20001
Phone: 616-3384
Fax: 353-9414

CERTIFICATE OF SERVICE

     I HEREBY CERTIFY that I caused a copy of the foregoing to be served upon Elita Amato, attorney for defendant Quinonez, and Anthony Martin, attorney for defendant Santiago, this 9th day of November, 2005.

_____
Catherine Connelly
Assistant United States Attorney